**Affirmed and Memorandum Opinion filed March 30, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00402-CR

### ANDRE DEWAYNE LEE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17CR1929**

## MEMORANDUM OPINION

Appellant Andre Dewayne Lee was convicted of possession of methamphetamine (a controlled substance) between four and two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.115. In two issues, Appellant contends he received ineffective assistance from his trial counsel and that the evidence is insufficient to prove the charged offense. For the reasons below, we affirm.

### BACKGROUND

On July 3, 2017, Galveston Police Officer Robert Cantu responded to a

vehicle stopped on the Galveston causeway. Officer Cantu ran the vehicle's license plates, which returned several municipal warrants for Appellant. After confirming that Appellant was the vehicle's driver, Officer Cantu placed Appellant in custody.

Officer Cantu then called a wrecker to tow Appellant's vehicle off the causeway. As the car was being loaded on the wrecker, a piece of the door frame fell off and exposed a "manufactured hole." In the hole, Officer Cantu found a white powder substance (later confirmed to be methamphetamine), a digital scale, and a gun. While searching the rest of the car, Officer Cantu also found a glass pipe that contained a "white residue." Appellant denied knowing the items were present in the vehicle and none of the items were tested for fingerprints or DNA.

Appellant was charged with possession of a controlled substance between four and two hundred grams. Appellant was offered a plea bargain by the State, which was rejected. The State then withdrew its plea offer and filed an enhancement provision. Appellant proceeded to trial in April 2019; the jury found Appellant guilty of the charged offense and assessed punishment at 25 years' confinement. Appellant timely appealed.

## ANALYSIS

In two issues, Appellant asserts (1) he received ineffective assistance of counsel during the plea-bargaining process, and (2) the evidence is factually insufficient to prove possession of a controlled substance. Because Appellant's second issue, if sustained, would yield the greatest relief, we address it first. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

2

## I.    Sufficiency of the Evidence

Appellant asks this court to conduct a factual sufficiency review of the evidence adduced at trial, but this standard was expressly rejected by the Court of Criminal Appeals in *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.).  In *Brooks*, the court adopted the legal sufficiency standard as "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Id*. at 912 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-20 (1979)).  We are bound to follow the decisions of the Texas Court of Criminal Appeals where, as here, that court has deliberately and unequivocally interpreted the law in a criminal matter.  *Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  Therefore, we overrule Appellant's factual sufficiency challenge.

Because the body of Appellant's sufficiency challenge also raises arguments under the legal sufficiency standard of review, we review the evidence in light of that standard.

### A.    Standard of Review and Governing Law

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences therefrom, any rational factfinder could have found the elements of the offense beyond a reasonable doubt.  *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018); *Davis v. State*, 586 S.W.3d 586, 589 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).  We may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence.  *Davis*, 586 S.W.3d at 589.  We defer to the factfinder to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences

3

from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). "Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction." *Davis*, 586 S.W.3d at 589.

"As the Supreme Court recently made clear in *Musacchio v. United States*, a reviewing court's limited determination on sufficiency review does not rest on how the jury was instructed." *Ramjattansingh*, 548 S.W.3d at 546 (citing *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016)). Thus, to determine whether the State has met its burden to prove a defendant guilty beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge for the case to the evidence adduced at trial. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury "charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Here, Appellant was charged with possession of a controlled substance, which requires the State to prove the defendant (1) exercised care, custody, control, or management over the controlled substance; and (2) knew the substance was contraband. Tex. Health & Safety Code Ann. § 481.115; Tex. Penal Code Ann. § 1.07(a)(39); *see also Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.— Houston [14th Dist.] 2018, pet. ref'd). To establish the first element, the State must prove the defendant had more than a fortuitous connection to the controlled substance; the defendant's mere presence at the location the drugs were found is insufficient. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

4

However, the defendant's presence, when combined with other "affirmative links," can be sufficient to establish this element beyond a reasonable doubt. *Medina*, 565 S.W.3d at 873.

An affirmative link can be established through any of these nonexclusive factors: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. "The number of factors present is not as important as the logical force the factors create to prove that the defendant knowingly possessed the controlled substance." *Medina*, 565 S.W.3d at 874 (quoting *Evans*, 202 S.W.3d at 162).

### B. Application

Legally sufficient evidence supports the jury's finding that Appellant was in possession of a controlled substance.

Testifying at trial, Officer Cantu said he approached a vehicle stopped on the Galveston causeway and ran its license plates. According to Officer Cantu, the return showed that "[t]he possible driver or owner . . . had municipal warrants out of a different county." Officer Cantu made contact with the vehicle's driver,

Appellant, and confirmed that Appellant's identification matched the information on the warrants. Officer Cantu placed Appellant in custody while a wrecker pulled up to remove Appellant's vehicle from the causeway.

Officer Cantu testified that, while Appellant's vehicle was being loaded on the wrecker, "a piece of the door frame fell off . . . [and] [i]n plain view there was — appeared to be a crystal substance." Officer Cantu described the space behind the door frame as a "manufactured hole" or a "modification" made to the vehicle. Officer Cantu said a crystal substance (later confirmed to be methamphetamine) was found inside a black sock. In the same space Officer Cantu also recovered (1) a firearm "covered up in a black sock", and (2) a "black digital scale." According to Officer Cantu, the firearm was loaded with five rounds when it was found.

While searching the rest of the car, Officer Cantu found a glass pipe with "white residue." Officer Cantu opined that, in his experience, this type of pipe was used to smoke methamphetamine. Officer Cantu could not recall exactly where in the vehicle he found the pipe but agreed it was in a place "readily accessible to someone who's driving the vehicle."

This evidence supports the finding that Appellant had more than a "fortuitous connection" to the methamphetamine found in the vehicle. *See Evans*, 202 S.W.3d at 161; *Medina*, 565 S.W.3d at 873. When Officer Cantu approached the car, Appellant was the only person in the vehicle and had sole control of the car. The car's license plates, when ran by Officer Cantu, returned Appellant's information, suggesting Appellant owned or had a right to possess the vehicle. The methamphetamine was found in a controlled space hidden behind the vehicle's door frame, along with a digital scale and a firearm. Officer Cantu also found in the vehicle a glass pipe he believed was used to smoke methamphetamine; Officer

6

Cantu recalled that the pipe was found in a place readily accessible by the vehicle's driver. Considered together and viewed in a light favorable to the jury's verdict, this evidence is legally sufficient to show Appellant's knowledge of and control over the methamphetamine.

We overrule Appellant's second issue.

## II.     Ineffective Assistance of Counsel

Asserting that he received ineffective assistance of counsel during the plea bargain process, Appellant argues "Defense Counsel failed to allow the Appellant the opportunity to take the [plea] offer."

### A.     Standard of Review and Governing Law

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Lopez*, 343 S.W.3d at 142.

To satisfy the first prong, an appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. To establish a claim of ineffective assistance where an appellant alleges he was not made aware of a plea bargain offer or rejected a plea bargain because of bad legal advice, the appellant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept

the plea bargain. *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013).

In making this showing, an appellant must overcome a strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Lopez*, 343 S.W.3d at 142; *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission." *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007).

In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*.

If trial counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348. "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Absent a record sufficient to demonstrate that trial counsel's conduct was not the product of a strategic or tactical decision, we should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696-97 (Tex. Crim. App. 2008) (en banc) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App.

8

2005)).

To satisfy the second prong, an appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for trial counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142.

## B. Application

Here, Appellant's ineffective assistance argument is based on pre-trial discussions before the trial court regarding plea offers made by the State.

On April 8, 2019, Appellant appeared at an arraignment hearing in the trial court. During the hearing, the trial court confirmed that Appellant understood the charged offense and the punishment range. After the indictment was read, the trial court asked Appellant how he pleaded to the charge and Appellant responded, "Not guilty." The trial court then had the following exchange with Appellant regarding plea agreements offered by the State:

| | |
|---|---|
| COURT: | Okay. So [Appellant], you understand that I don't know if the offer is still out there, but there was a plea offer. You understand it, right? |
| APPELLANT: | Yes, sir. Yes, sir. |
| COURT: | And you don't want to take that plea agreement; is that right? |
| APPELLANT: | No, sir. |

Appellant also confirmed that he chose to have punishment assessed by the jury.

Appellant's trial was scheduled to begin the next day. Before trial commenced, Appellant spoke to the trial court and asserted he "was under the impression yesterday that [he] was coming for a plea agreement. [He] wasn't

under the impression that [he] was coming to start trial." Asserting his trial counsel had been "misleading" him, Appellant stated he and his trial counsel "didn't prepare for trial or nothing." Appellant stated that he "never got a chance to talk" to his trial counsel "about the plea agreement."

In response, Appellant's trial counsel stated:

> Let me be clear. To my knowledge, it was only two plea offers ever made. The first one was for a higher number of years. Then we got an offer from [the State] that I told [Appellant] about for a lower number of years. That was not accepted. Then somewhere in there we have the hearing before the bench. [Appellant] wants to fire me. That's fine with me, but you kept me on and then as we're getting — as we're approaching the second week in trial on the 4th, on the 4th, I get the email from [the State] basically saying all offers are revoked and he informs us of, oh, by the way, we're going — here's a notice of enhancement. So I go see [Appellant] as soon as I could which I think was on a Sunday. I tell [Appellant] here's where we are. We've got no offers. We're No. 2 for trial. We may go to trial. And here is the possible penalty range.

The trial court rejected Appellant's argument and the parties proceeded to trial.

To prevail on appeal, Appellant was required to show a reasonable probability that he would have accepted the earlier plea bargain offer if counsel had not given ineffective assistance. *See Ex parte Argent*, 393 S.W.3d at 784; *Lopez*, 343 S.W.3d at 142. On this record, Appellant fails to meet that burden. Although Appellant told the trial court that he did not have the opportunity to discuss the State's plea offer with his trial counsel, that statement is contradicted by (1) trial counsel's statements that he informed Appellant of the plea agreement offer and that it was not accepted, and (2) Appellant's statements at the April 8 arraignment hearing where he confirmed there was a plea agreement offer and that he did not want to take it.

Moreover, a motion for new trial was not filed and trial counsel was not afforded an opportunity to further explain these allegations. *See Roberts*, 220 S.W.3d at 533-34. Considering the record as a whole, it does not affirmatively demonstrate the alleged ineffectiveness necessary to satisfy the first *Strickland* prong. *See Thompson*, 9 S.W.3d at 813. Because Appellant failed to satisfy the first *Strickland* prong, we need not consider whether the requirements of the second prong were met. *See Lopez*, 343 S.W.3d at 142.

We overrule Appellant's first issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    Meagan Hassan
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).

11