**Affirmed and Opinion filed December 18, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00611-CR

### GUILLERMO FLORES MEDINA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1521065**

## OPINION

We consider two issues in this appeal from a conviction for possession of a controlled substance: (1) whether the evidence is sufficient to support the conviction, and (2) whether the trial court abused its discretion by denying a motion to suppress. For reasons explained more fully below, we conclude that the evidence is sufficient to support the conviction, and that the trial court did not abuse its discretion with its ruling on the motion to suppress. We therefore affirm the trial court's judgment.

# I. BACKGROUND

## A. The Arrest and Search

There is a well-known drug house in Houston where law enforcement has been making drug busts for more than thirty years. Appellant approached that drug house when police were surveilling it as part of an ongoing narcotics investigation. An undercover officer saw appellant exit his vehicle, enter the drug house on foot, and return after a few minutes. Appellant opened the hood of his vehicle for a brief mechanical inspection, and then he drove away.

The undercover officer never witnessed appellant engage in a hand-to-hand transaction, but the officer suspected that appellant had completed a drug deal of some kind based on his presence at the drug house and on the short duration of his visit. The undercover officer radioed a marked patrol unit, which had been waiting nearby, and asked that unit to develop probable cause to stop appellant for a traffic violation.

The marked patrol unit was manned by Officer Coleman Smith and his partner, Officer Meghan Schromen. They initiated a traffic stop because appellant did not have a license plate affixed to the front of his vehicle.

Appellant was cooperative during the traffic stop. When Officer Smith asked whether appellant had a driver's license, appellant candidly admitted that he did not. Immediately after appellant made that admission, Officer Smith ordered appellant out of the vehicle and patted him down. Once Officer Smith determined that appellant did not have any contraband on his person, Officer Smith placed appellant in handcuffs and secured him in the back of the patrol car. At no point did Officer Smith advise appellant of his rights or even inform appellant that he was under arrest.

2

Despite having no verbal confirmation of appellant's arrest, Officer Schromen believed that appellant had been arrested, and she began to search appellant's vehicle as soon as appellant was placed in handcuffs. She pulled apart loose panels in the driver's seat and driver's door. She also looked through the center console and through articles of clothing scattered inside the vehicle. She found nothing remarkable in her search, other than a few hypodermic syringes, which had been on the floor in a plastic bag near the rear passenger seat.

Officer Smith attended to appellant as Officer Schromen conducted her search, but after the syringes were discovered, Officer Smith joined Officer Schromen in her search. Based on a tip he had received from his supervisor, who had also been conducting surveillance of the drug house, Officer Smith opened the hood of appellant's vehicle and looked around, but he found nothing remarkable there either.

Officer Smith radioed his supervisor and said that no drugs had been found in appellant's vehicle. "He must have hidden it pretty good," he informed his supervisor. "We checked all the usual places."

At that point, Officer Smith requested the assistance of a canine unit, which arrived at the scene more than ten minutes later. The dog performed an open-air sniff around the exterior of the vehicle and alerted almost immediately to the presence of narcotics. When the canine handler gave the command for the dog to enter the vehicle, the dog jumped inside and signaled that drugs were hidden in an area near the center console, under the carpet, and by the front passenger seat. The canine handler pulled up the carpet in that area and found a package containing just over fifteen grams of heroin.

**B.    The Motion to Suppress**

Appellant moved to suppress that evidence. At the live hearing on the motion, the arguments largely revolved around the following three disputes: (1) whether appellant was under arrest when his vehicle was searched, or whether he was merely in a temporary detention; (2) if appellant was under arrest, whether Officers Smith and Schromen performed a valid inventory search, or whether they engaged in an invalid fishing expedition; and (3) whether the automobile exception justified the warrantless search of appellant's vehicle.

Defense counsel argued that appellant had been detained, rather than arrested. Then, citing *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), counsel argued that the detention was unreasonably prolonged by the canine unit because Officers Smith and Schromen had already completed their traffic investigation and they lacked reasonable suspicion to believe that appellant was in possession of contraband.

In the alternative, defense counsel argued that if appellant was under arrest, then the inventory search was invalid because it was not performed according to the officers' policy. Counsel also argued that the dog sniff was an unlawful extension of the invalid inventory search, and that the automobile exception did not apply because appellant's vehicle was already impounded, and therefore, it was not freely mobile.

The State countered that appellant had been arrested for driving without a license. Because appellant was not merely detained, the State argued that *Rodriguez* did not apply. The State then encouraged the trial court to find that the officers had performed an inventory search for the simple reason that the officers testified that they had performed an inventory search. The State did not address the point about the automobile exception.

4

The trial court denied the motion to suppress, and the jury convicted appellant as charged.

## II.     SUFFICIENCY OF THE EVIDENCE

Appellant challenges the sufficiency of the evidence in his second issue on appeal, but we address that issue first because, if meritorious, it would afford him greater relief than his other issue.

When reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The scope of our review is all of the evidence in the record, regardless of whether it was properly or improperly admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider any reasonable inferences that can be drawn from the evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The charged offense has the following essential elements: (1) the defendant exercised care, custody, control, or management over the controlled substance; and (2) the defendant knew that the substance was contraband. *See* Tex. Health & Safety Code § 481.115; *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).

To establish the first element, the State must prove that the defendant's connection with the controlled substance is more than just fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, control, or management of those drugs. *Id.* at 162. However, the defendant's presence, when combined with other "affirmative links," can be sufficient to establish this element beyond a reasonable doubt. *Id.*

5

An affirmative link can be established through any of these nonexclusive factors: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. The number of factors present is not as important as the logical force the factors create to prove that the defendant knowingly possessed the controlled substance. *Id.* at 162.

Turning now to the evidence presented in this case, we note that appellant's vehicle was actually registered to his brother, rather than to appellant individually. However, appellant was the only person in the vehicle when it was stopped, and it contained several belongings that were admittedly his. These belongings included mail addressed to him, prescription medicine bottles bearing his name, and hypodermic syringes that appellant explained were used to manage his diabetes. The syringes were never tested for the presence of narcotics, but the jury could have rejected appellant's medical explanation and reasonably inferred that the syringes were used for injecting heroin instead. *See Tate v. State*, 500 S.W.3d 410, 416 (Tex. Crim. App. 2016) (identifying syringes as drug paraphernalia in an analysis of affirmative links). That inference is also supported by the testimony that, just before

his traffic stop, appellant made a short visit to a well-known drug house, which is consistent with his having made a drug transaction. Based on the totality of these circumstances, the jury could have reasonably found that appellant exercised actual care, custody, control, or management of the substance that was found in his vehicle.

The jury could have likewise inferred that appellant knew that the substance was contraband, which is the second element of the offense. This inference is supported by evidence that appellant hid the substance under the carpet, in a place that only a drug-sniffing dog could detect.

We conclude that the evidence is sufficient to support a finding of every essential element of the offense beyond a reasonable doubt.

## III.   MOTION TO SUPPRESS

### A.   The Standard of Review and Findings of Fact

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). Under this standard, the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case, even if the trial court did not purport to rely on that theory. *See State v. Esparza*, 413 S.W.3d 81, 85 (Tex. Crim. App. 2013).

The trial court made the following findings of fact and conclusions of law:

- "The Defendant was observed at a location known by [the undercover officer], who radioed out the description of the Defendant's vehicle to local marked patrol units."

- The undercover officer "did not observe the Defendant engage in any hand to hand transaction at the location, but testified that the Defendant's arrival

and short departure was consistent with being involved in a narcotics transaction."

- "The Defendant was stopped for failing to properly affix his front license plate . . . by . . . Officer C. Smith and Officer M. Schromen, who learned that the Defendant did not have a valid driver's license to operate a motor vehicle in the State of Texas."

- "The Defendant was arrested by Officer Smith for operating a motor vehicle without a valid license, a class C misdemeanor."

- "The Officers contacted a tow truck in order to tow the Defendant's vehicle."

- "During an inventory search of the Defendant's vehicle, Officer Schromen discovered a bag of syringes, which she believed were to be used in order to inject narcotics, but were not field tested for narcotics."

- "The Houston Police Department has an inventory search policy on file."

- "Officers Smith and Schromen testified truthfully."

- "While the Defendant's vehicle was still on the scene, a canine handler . . . arrived on the scene with his k-9 partner, approximately 25 minutes after the Defendant had been arrested for driving without a valid driver's license."

- The canine handler "had probable cause to conduct an exterior sweep of the Defendant's vehicle with his k-9 partner, and did not require a search warrant."

- "The k-9 unit conducted an exterior search of the vehicle and the dog alerted on the vehicle, at which point the dog and handler entered the

8

vehicle and the dog alerted on an area of the center console on the passenger side of the center console."

- "Based on the alert by the dog, [the canine handler] had probable cause to enter the Defendant's vehicle, and did not require a search warrant."

- The canine handler "lifted a plastic portion of the center console, doing no damage to the vehicle, and was able to observe a blue rag" containing "15.08 grams of heroin, which field tested positive, and was later confirmed to be heroin by the Houston Forensic Science Center."

- "Based on the fact that the Defendant was under arrest for a class C misdemeanor, the inventory search conducted by Officer Schromen was not in violation of the Defendant's rights, Officer Schromen did not require a search warrant, and the Court concludes the syringes recovered from the search were lawfully obtained."

- "Based on the fact that the Defendant was under arrest for a class C misdemeanor, the exterior and interior searches of the Defendant's vehicle by [the canine handler] and his canine partner was not in violation of the Defendant's rights, there was no requirement that [the canine handler] obtain a warrant for the Defendant's vehicle, and the Court concludes the heroin recovered from the search was lawfully obtained."

Appellant does not challenge the trial court's findings that the officers had probable cause to initiate the traffic stop, or that the officers arrested him (as opposed to merely detained him) for driving without a license. However, he does challenge the trial court's ultimate conclusion that the officers lawfully obtained the heroin.

9

## B. The Dog Sniff Following the Arrest

We begin our analysis with the unchallenged finding of arrest. That finding is significant because the heroin was discovered after an open-air dog sniff around the exterior of a vehicle, and an officer's authority to conduct such a dog sniff depends on whether a person is detained or arrested.

The police have the authority to detain a person for a routine traffic stop, but to stay within the bounds of the Fourth Amendment, the duration of that detention must be consistent with the "mission" of the detention. *See Rodriguez*, 135 S. Ct. at 1614. Normally, that mission is to address the traffic violation that warranted the stop, and to attend to related safety concerns. *Id.*

A dog sniff is not part of a valid traffic mission because a dog sniff is aimed at detecting evidence of ordinary criminal wrongdoing. *Id.* at 1615. Thus, once an officer's traffic mission has been completed, the officer may not prolong the detention for a dog sniff to be performed, unless the officer has the reasonable suspicion that is ordinarily demanded for the temporary detention of a person. *Id.* at 1615–16.

The rule is different when a person has been placed under lawful arrest. In that circumstance, the performance of a dog sniff does not subject the person to any additional detention or delay that would make the seizure of his person constitutionally unreasonable. Accordingly, once a lawful arrest has been made, the police may prolong the seizure of a person by waiting for the arrival of a drug-sniffing dog. *See United States v. Fonville*, 652 Fed. App'x 383, 387 (6th Cir. 2016) ("There is no such time limit on detention for a dog sniff following a lawful arrest.").

Appellant's arrest was lawful because appellant admitted to Officer Smith that he had been driving without a license. *See Daniels v. State*, 600 S.W.2d 813, 814–

15 (Tex. Crim. App. 1980). At the moment that appellant was placed under arrest, Officer Smith could call for the assistance of a canine unit without any concern that the additional delay would amount to an unconstitutional seizure of appellant's person.

Appellant does not dispute the legality of his arrest, but he argues that the ensuing dog sniff was an illegal search because Officer Smith lacked probable cause that appellant was in possession of contraband. This argument is fatally flawed.

When a trained canine performs an open-air sniff around the exterior of a vehicle, the sniff is not considered a search at all for purposes of the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment."). The open-air sniff merely alerts to the presence of contraband, in which no person has a legitimate expectation of privacy. *Id.* at 409 ("Accordingly, the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view'—during a lawful traffic stop, generally does not implicate legitimate privacy interests."); *id.* at 410 ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.").

If a drug-sniffing dog positively alerts to the presence of a controlled substance, the police then have probable cause to arrest a person for the possession of that controlled substance. *See Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet. ref'd); *De Jesus v. State*, 917 S.W.2d 458, 461 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). And once the police develop probable cause to arrest a person for a drug-related offense, the police have the authority to search the person's vehicle for evidence of the controlled substance, even if the person has

11

already been arrested and secured in the back of a patrol car because of a separate traffic-related violation. *See State v. Sanchez*, 538 S.W.3d 545, 551 (Tex. Crim. App. 2017).

Appellant does not dispute these basic tenets, but he argues that the search following the dog sniff was illegal because there is no evidence that the dog correctly alerted, or alerted at all, to the presence of contraband. Appellant directs our attention to video evidence showing that, just before the dog sniff was performed, Officer Smith disabled his body worn camera, and Officer Schromen removed her body worn camera and pointed it away from the vehicle. The officers' decisions in this regard may be questionable, and perhaps even a violation of protocol, but in any event, Officer Smith testified that the dog alerted on the vehicle, and we must credit that testimony because the trial court specifically found that Officer Smith had testified truthfully.

## C. The Inventory Search

Appellant also argues that the search following the dog sniff was illegal because it was an extension of an invalid inventory search. Appellant points out that the purpose of an inventory search is to protect personal property while a vehicle is impounded—not to provide "a ruse for a general rummaging in order to discover incriminating evidence." *See Florida v. Wells*, 495 U.S. 1, 4 (1990). Appellant asserts that the inventory search conducted by Officers Smith and Schromen was invalid precisely because they had this evidentiary intent.

There is abundant evidence to support appellant's argument that the officers were on a fishing expedition, instead of performing a legitimate inventory search. For example:

- Officers Smith and Schromen were working in tandem with an undercover officer, who asked them to perform a pretextual traffic stop of appellant's vehicle.

- Officer Smith searched under the hood of appellant's vehicle, which he admitted was inconsistent with his policy for conducting an inventory search.

- Officer Smith called for the assistance of a canine unit because he believed that appellant "must have hidden [the drugs] pretty good."

- Even though she properly confined her inventory search to the passenger compartment of the vehicle, Officer Schromen pulled apart loose panels in the driver's seat and driver's door, which is consistent with having an evidentiary intent.

- Video from her body worn camera never showed Officer Schromen preparing a written inventory form, or even taking notes about the contents of appellant's vehicle.

- Officer Schromen initially testified that she could not remember whether she prepared an inventory, but then she changed her testimony and affirmatively said that she did prepare an inventory, even though the State never produced a written copy of that inventory.

For the sake of argument, we can assume without deciding that the officers' inventory search was invalid, as appellant contends. Nevertheless, the officers' invalid inventory search does not require a suppression of the heroin because the officers did not discover the heroin during their invalid inventory search. Rather, a drug-sniffing dog discovered the heroin, and the dog was an independent source. *See Wehrenberg v. State*, 416 S.W.3d 458, 465 (Tex. Crim. App. 2013) ("Evidence

derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion."); *see also United States v. Forbes*, 528 F.3d 1273, 1278–80 (10th Cir. 2008) (holding that a drug-sniffing dog was an independent source); *United States v. Moore*, 329 F.3d 399, 404 (5th Cir. 2003) (same).

The only evidence of inculpatory value that was discovered in the invalid inventory search was the bag of syringes. Even if we assumed that the admission of those syringes was erroneous, we could not conclude that appellant suffered any harm. *See* Tex. R. App. P. 44.2(b). The syringes were not an element of the offense. And given the testimony that appellant had paid a short visit to a well-known drug house just before the traffic stop, there was already ample evidence from which the jury could have reasonably concluded that appellant knowingly possessed the heroin. As to that element of knowing possession, the syringes were not likely to move the jury from a state of non-persuasion to a state of persuasion.

## D.     The Automobile Exception

Appellant makes one final argument regarding the automobile exception. Under that exception, law enforcement officials may conduct a warrantless search of a vehicle if the vehicle is readily mobile and there is probable cause to believe that it contains contraband. *See Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). Appellant contends that this exception would not apply because, even if the officers had probable cause to believe that his vehicle contained contraband, there was evidence showing that his vehicle was suffering from mechanical issues, and therefore, it was not readily mobile.

Appellant did not present this particular argument to the trial court. He argued below that the automobile exception did not apply because his vehicle had been impounded—not because it was suffering from mechanical issues. But even if he

14

had presented that other argument, the trial court could have reasonably found that his vehicle had been readily mobile because the officers testified that he was driving it immediately prior to the traffic stop.

## IV.   CONCLUSION

We hold that the evidence is legally sufficient to support the conviction. We further hold that the trial court acted within the bounds of its discretion by denying the motion to suppress because (1) the officers were authorized to call for the assistance of a drug-sniffing dog after lawfully arresting appellant for a traffic violation; (2) the drug-sniffing dog discovered the heroin after an exterior sweep of appellant's vehicle, which did not require a warrant or probable cause; (3) the dog sniff was independent of any illegality that occurred during the officers' inventory search, which did not produce any harmful evidence in any event; and (4) there was evidence from which the trial court could have reasonably found that the automobile exception did apply. Based on these holdings, we affirm the trial court's judgment.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison, and Brown.
Publish — Tex. R. App. P. 47.2(b).