**Affirmed and Memorandum Opinion filed August 31, 2021.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-19-00552-CR**

---

**ROSHANDA ANTIONETTE HUMPHREY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 18-CR-1250**

---

**MEMORANDUM OPINION**

A jury convicted appellant Roshanda Antionette Humphrey of possession with intent to deliver a controlled substance weighing 400 grams or more. The jury also found that appellant committed the offense while using or exhibiting a deadly weapon. Appellant challenges the legal sufficiency of the evidence in support of the jury's finding that she possessed the controlled substance, cocaine, on the basis that no evidence affirmatively links her to the cocaine. She also contends that the evidence is legally insufficient to support the finding that she committed the

offense while using or exhibiting a deadly weapon. We affirm.

## *Background*

Acting on a tip from a confidential source, officers staked out a business located between La Marque and Texas City, Texas. At around 9 p.m. that day, they observed Ricky McKinney, described by an officer as a known drug trafficker, arrive in a Jeep and go into the building. Approximately one hour later, appellant arrived driving a Chevy Tahoe, with two passengers. Appellant and passenger Bobby Fisher exited the Tahoe and went into the business. Appellant was carrying a trash bag, and Fisher was carrying a duffle bag. The other passenger stayed in the Tahoe. Officers were unable to observe anything inside the building, the trash bag, or the duffle bag.

After another fifteen minutes, McKinney left the building, got into the Jeep, and drove away. Five or ten minutes later, appellant and Fisher exited the building. Fisher was still carrying the duffle bag, but appellant no longer had the trash bag. Appellant got back into the driver's seat in the Tahoe, and Fisher opened the passenger side door and placed the duffle bag inside. Fisher remained outside the vehicle but leaned in "while messing with what appeared to be the center console" for approximately eight minutes while appellant was sitting in the driver's seat. Officers could not see exactly what Fisher was doing.

Officers observed appellant drive away with the two passengers. They contacted a patrol officer, Officer Goetschius, and asked him to watch for the vehicle with an eye toward stopping it. Once he spotted the vehicle, Goetschius followed and then pulled the vehicle over for various traffic violations.

Officer Fasolino arrived as backup. Fasolino testified that he smelled marijuana "emitting from the vehicle," which he believed gave him probable cause to search it. He put his hand on the center console and noticed it was "extremely

loose." He was able to pop out the front part of the console and saw black carpet that did not match the rest of the carpet and was "not consistent with factory vehicles." Inside the console, Fasolino found four bricks of a "white powder-like substance," two guns—one loaded and one unloaded, and a magazine containing ammunition. The substance was tested in a lab, and the lab report was admitted by agreement at trial. The substance was identified in the report as 3,990 grams of cocaine hydrochloride, which is nearly four kilograms.

A grand jury charged appellant with possession with intent to deliver 400 grams or more of a controlled substance, namely cocaine. The jury found appellant guilty and found that appellant used or exhibited a deadly weapon during the commission of the offense. After the punishment phase of trial, the jury assessed punishment at 40 years' confinement.

## *Discussion*

Appellant contends in two issues that the following jury findings are not supported by legally sufficient evidence: that appellant (1) knowingly possessed cocaine in an amount of 400 grams or more and (2) used or exhibited a deadly weapon during commission of the offense. When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences

from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. The "law as authorized by the indictment" includes the statutory elements of the offense as modified by the indictment. *Id*.

## I.  Possession of a Controlled Substance

The first issue is whether there is legally sufficient evidence that appellant knowingly possessed the cocaine that officers discovered in the Tahoe.[1] The grand jury charge in this case alleged that appellant "knowingly possess[ed], with intent to deliver, a controlled substance, namely, cocaine, in an amount of 400 grams or more." Appellant was thus charged with violating Health and Safety Code section 481.112 by "knowingly possess[ing] with intent to deliver a controlled substance listed in Penalty Group 1," which includes cocaine. Tex. Health & Safety Code § 481.112(a); *see also id*. § 481.102(3)(D) (listing cocaine as included in Penalty Group 1). The allegation that appellant possessed 400 grams or more sets the

---

[1] Appellant does not challenge the sufficiency of the evidence in support of the other elements of the offense.

4

degree of the offense. *Id*. § 481.112(f).

To show a defendant "knowingly possessed" contraband, the State was required to prove that she exercised "actual care, custody, control, or management" over the substance and knew it was contraband. *See id*. § 481.002(38) (defining possession); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). The State does not need to show exclusive possession of the contraband. *Espino-Cruz v. State*, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). Control over the contraband may be exercised by more than one person. *Id*. The elements of possession may be proven through direct or circumstantial evidence, but the State must prove that the defendant's connection with the controlled substance is more than just fortuitous. *Id*. at 544 (citing *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006), and *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015)); *Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

The defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, control, or management of those drugs. *Medina*, 565 S.W.3d at 873. However, the defendant's presence, when combined with other "affirmative links," can be sufficient to establish this element beyond a reasonable doubt. *Espino-Cruz*, 586 S.W.3d at 544; *Medina*, 565 S.W.3d at 873. The Court of Criminal Appeals has recognized the following nonexclusive factors as tending to establish affirmative links: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband when arrested; (6) whether the defendant

made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12; *Espino-Cruz*, 586 S.W.3d at 544.

The presence of a large quantity of contraband can also indicate that a defendant had knowledge of its presence. *Espino-Cruz*, 586 S.W.3d at 544; *see also Olivarez v. State*, 171 S.W.3d 283, 292 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[T]he large quantity of marijuana present . . . indicated appellant had knowledge of the marijuana."). The logical force of all the evidence—not the number of affirmative links—is dispositive. *Black v. State*, 411 S.W.3d 25, 28-29 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Evans*, 202 S.W.3d at 162). The absence of various links is not evidence of innocence to be weighed against the affirmative links present. *Espino-Cruz*, 586 S.W.3d at 544. We examine each case on its own facts. *Id.*

Several affirmative links were present here. Appellant was driving the vehicle where the cocaine was found and was present while the search was conducted. *See Black*, 411 S.W.3d at 29 (noting defendant was driving at time of stop); *see also Espino-Cruz*, 586 S.W.3d at 545 (noting defendant was in passenger seat at time of traffic stop); *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (same). She asserts that she did not own the Tahoe, but the record does not indicate who owned the vehicle, although appellant told Fasolino that it was not her car. Presuming without deciding that appellant did

not own the vehicle, the fact that she was driving the car immediately before the search tends to establish an affirmative link. *See Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding affirmative links were present when marijuana was found under driver's seat of car the defendant did not own but had been driving).

Appellant was sitting very close to the contraband stowed in the center console of the vehicle at the time of the traffic stop. The center console, as a controlled, enclosed space, tends to establish an affirmative link between appellant and the contraband. *See Espino-Cruz*, 586 S.W.3d at 545 (concluding trunk was enclosed space); *see also Medina*, 565 S.W.3d at 874 (holding inference that defendant knew substance was contraband was supported by evidence that substance was hidden under carpet in car).

The contraband was also readily accessible from the driver's seat. Although Officer Fasolino had to break open the center console to access the contraband, he testified that there was an aftermarket box under the cup holders that was secured by a trunk latch that typically can be opened by a sequence causing the latch to open ("Say you flip the lights on three times, turn the blinker on and hit the breaks [sic] and that will access . . . a relay that will allow the latch to open."). Convenient access to contraband in a vehicle suggests knowledge of and control over the contraband. *Espino-Cruz*, 586 S.W.3d at 545; *Robinson*, 174 S.W.3d at 326. The fact that the center console was extremely loose and had visible carpet that did not match the factory carpet also supports an inference that appellant knew contraband was stored in the console. *See Grant*, 989 S.W.2d at 433 (noting bag holding contraband was in plain view under driver's seat of vehicle).

Prior to the traffic stop, officers also observed Fisher, the passenger, outside the vehicle leaning in "while messing with what appeared to be the center console"

for approximately eight minutes while appellant was sitting in the driver's seat. Thus, appellant observed Fisher's actions, and this evidence supports an inference that appellant knew the contraband was in the center console. That combined with the large quantity of cocaine also supports an inference that appellant knew the drugs were present. *See Espino-Cruz*, 586 S.W.3d at 545; *Olivarez*, 171 S.W.3d at 292.

Other contraband was also found in the vehicle—Fasolino discovered marijuana shavings in the glovebox, which supports a finding that appellant knew there was contraband in the car. *See Olivarez*, 171 S.W.3d at 292. Fasolino further testified that he observed the odor of marijuana in the vehicle, which also supports such a finding. *See id*. at 292.

As to appellant's conduct, Fasolino told her during the stop, "you're acting real nervous," as shown on the video recorded by his body camera that was admitted at trial. The jury could observe appellant's demeanor on the video: a finding that a defendant appeared nervous also supports an affirmative link. *See Black*, 411 S.W.3d at 29.

Appellant points out that several affirmative links are not present—the contraband was not in plain view, there is no evidence that appellant owned the vehicle, there was no paraphernalia for using the contraband, traces of cocaine were not found on appellant, she had no special connection to the contraband, her fingerprints were not on it, she made no statements connecting her to the contraband, and she did not attempt to flee. But the State is not required to establish all possible affirmative links or present evidence on each factor, and the absence of some factors is not evidence of innocence that must be weighed against the other factors present. *Espino-Cruz*, 586 S.W.3d at 546; *Black*, 411 S.W.3d at 28-29 & n.4. Rather, it is the logical force of all the evidence, direct and

8

circumstantial, that is dispositive. *Evans*, 202 S.W.3d at 162; *Black*, 411 S.W.3d at 28-29.

Appellant also contends the contraband was not conveniently accessible, there was no strong odor of "contraband/cocaine," and she did not do anything indicating consciousness of guilt. We have already discussed these factors. There is evidence that the contraband was readily accessible, that there was an odor of marijuana in the vehicle, and that the jury could determine from appellant's demeanor whether she appeared nervous and whether that indicated a consciousness of guilt. Viewing the facts in the light most favorable to the jury's finding, we conclude the logical force of all the evidence supports the jury's finding that appellant possessed the cocaine. We overrule appellant's first issue.

## II.    Use of a Deadly Weapon

The second issue is whether there is legally sufficient evidence that appellant used a deadly weapon during the commission of the offense. As mentioned, the jury found appellant committed the offense while using or exhibiting a deadly weapon. An affirmative finding of the use or exhibition of a deadly weapon may be made when it is shown that the defendant used or exhibited a deadly weapon during the commission of the offense or was a party to the offense and knew that a deadly weapon would be used or exhibited.[2] Tex. Code Crim. Proc. art. 42A.054(b)-(d).

The parties agree there is no evidence that appellant exhibited a deadly weapon during commission of the offense, so we address only whether there is

---

[2] An affirmative deadly weapon finding is not a part of a defendant's sentence. *Ex parte Huskins*, 176 S.W.3d 818, 820–21 (Tex. Crim. App. 2005). The finding does not alter the range of punishment to which the defendant is exposed, or the number of years assessed. *Id.* at 821. The finding does, however, affect a defendant's eligibility for community supervision and parole. Tex. Code Crim. Proc. art. 42A.054(b)-(d); Tex. Gov't Code § 508.145(d)(1)-(2).

legally sufficient evidence that appellant used a deadly weapon. To support a deadly weapon finding, the State was required to show appellant not only possessed a deadly weapon but also used it to facilitate the associated felony. *See Plummer v. State*, 410 S.W.3d 855, 864–65 (Tex. Crim. App. 2013). Appellant argues there is no evidence that (1) she knew the weapons were in the console and thus knowingly possessed them, or (2) she used the weapons to facilitate possession of a controlled substance.

We have already held there is legally sufficient evidence that appellant knowingly possessed the cocaine discovered in the console. Based on the same reasoning and applying the same affirmative links, we conclude there is sufficient evidence that appellant knowingly possessed the weapons that were in the console with the cocaine. *See, e.g., Stout v. State*, 426 S.W.3d 214, 218 (Tex. App.— Houston [1st Dist.] 2012, no pet.) (applying affirmative links factors to determine whether defendant possessed a deadly weapon that was not found on him or in his exclusive possession). We turn to whether there is legally sufficient evidence that appellant used the weapons to facilitate possession of the cocaine.

The Court of Criminal Appeals has held that weapons found near illegal drugs can be used to facilitate possession and distribution of narcotics even when the defendant was not present when the weapons were found. *Coleman v. State*, 145 S.W.3d 649, 654–55 (Tex. Crim. App. 2004). In that case, two guns were found "in a room inside a safe containing two large bottles of PCP and large amounts of cash." *Id.* at 654. The court held that the cumulative effect of the evidence could have permitted a rational jury to determine that the defendant used the weapons to facilitate his possession and delivery of the narcotics. *Id.* at 654-55. The court in *Plummer* also recognized that a deadly weapon finding is permitted when no weapon is found on or near the defendant but the "weapons had facilitated

the possession of drugs by protecting them." 410 S.W.3d at 859.

The facts in this case are like the facts in *Coleman* because two firearms were found in a locked compartment with the cocaine. Here, the firearms were also within arms' reach of appellant and accessible to her while she was driving. One firearm was loaded, and the other had a loaded cartridge beside it. As in *Coleman*, the cumulative effect of the evidence—here a loaded firearm and ammunition alongside an unloaded firearm, and four bricks of cocaine hidden in a locked and accessible compartment near appellant—could have permitted a rational factfinder to conclude that appellant used the weapons to facilitate the care, custody, and management of the contraband and its intended distribution. *See Coleman*, 145 S.W.3d at 655; *see also Tucker v. State*, No. 08-19-00016-CR, 2020 WL 729195, at *4 (Tex. App.—El Paso Feb. 13, 2020, no pet.). Viewing the facts in the light most favorable to the jury's deadly weapon finding, sufficient evidence supports the affirmative finding that appellant used a deadly weapon to facilitate her possession with intent to deliver a controlled substance. We overrule issue two.

### *Conclusion*

We conclude the jury's findings that appellant knowingly possessed cocaine in an amount of 400 grams or more and used a deadly weapon during commission of the offense are supported by legally sufficient evidence. We affirm the judgment of the trial court.

/s/     Frances Bourliot
        Justice

Panel consists of Justices Wise, Bourliot, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11