

# NUMBER 13-24-00337-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CODY WADE PRESLEY,                                       **Appellant,**

## v.

THE STATE OF TEXAS,                                            **Appellee.**

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF JACKSON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Chief Justice Tijerina**

Appellant Cody Wayne Presley appeals his conviction of manufacture or delivery of a controlled substance in penalty group 1, to-wit methamphetamine, in the amount of four grams or more but less than 200 grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). Appellant was sentenced to seventy-five years'

confinement.[1]  By what we construe and renumber as two issues, appellant contends that the trial court should have granted his motion to suppress and that his sentence "amounts to cruel and unusual punishment". We affirm.

## I.     BACKGROUND[2]

On March 2, 2022, Jackson County Sheriff's Deputy Bryan Martin noticed that appellant had an expired registration sticker, which Deputy Martin confirmed on his computer. Deputy Martin turned on his overhead lights and pursued appellant to initiate a traffic stop. Deputy Martin testified that he recognized appellant and knew that he was a convicted felon. Deputy Martin had previously been informed that appellant was involved in other crimes, including drug use and that the officers "kept . . . a watchful eye . . . [on appellant, and he s]tarted investigating it." Deputy Martin elaborated that there had been "lots of complaints from the public" including "Facebook posts about him on a Community Bulletin Board" and that "[a] neighbor had come to us and told us about his behavior."

Deputy Martin stated that as he followed appellant's vehicle, appellant weaved in and out of his lane. At the motion to suppress hearing, a video from Deputy Martin's dashcam was played as Deputy Martin pointed out the instances appellant weaved. Based on his experience, Deputy Martin believed appellant's weaving suggested that he was reaching down and hiding something. Deputy Martin explained that reaching down

---

[1] Appellant's punishment range was enhanced pursuant to the repeat felony offender statute. *See* TEX. PENAL CODE ANN. § 12.42(c)(1).

[2] Videos of the traffic stop were admitted into evidence. We describe the facts based on testimony from the suppression hearing and the videos of the traffic stop.

"[c]auses them to go off the road because they're not looking. They're trying to stash something." According to Deputy Martin, appellant passed several parking lots that he could have pulled into before stopping his vehicle. The State asked, "Is that playing [on] your . . . [s]uspicion that he may have been trying to conceal something . . . [b]ecause it took a little longer to pull over?" Deputy Martin said, "Yes." Deputy Martin observed that appellant was nervous and shaking, and appellant asked Deputy Martin to let him go a couple of times, which Deputy Martin described as "[s]trange behavior." Deputy Martin thought that appellant was "worried" that Deputy Martin would "uncover[] something else" and appellant "want[ed] to get out of there as fast as he [could]." Based on his observations of appellant's behavior, Deputy Martin believed appellant was worried about something other than a traffic violation. Shortly after the traffic stop, appellant exited the vehicle and followed Deputy Martin to the rear of his vehicle.[3] Another officer soon arrived.[4] During his investigation, Deputy Martin learned that the vehicle was not registered to appellant, and there was no insurance.

After Deputy Martin asked if appellant had "anything illegal in the vehicle," appellant responded, "not that I know of." Deputy Martin said, "I know exactly what's in my vehicle . . . at any given time you can ask me and I can say no, there's nothing in my vehicle." Deputy Martin stated that "on several traffic stops throughout the years, whether if I inquire about it, the ones that have said that have usually had some kind of contraband in their vehicle." Appellant then told Deputy Martin that a friend named "Waco" had

---

[3] The video admitted into evidence showing the men move to the back of appellant's vehicle does not have sound. Thus, it is not clear exactly when in the conversation the two men proceeded to the rear.

[4] The other officer did not testify at the suppression hearing.

"dropped something in his vehicle . . . . some type of narcotic and . . . [appellant] was worried about it."

Appellant wanted permission to reenter his vehicle, which caused Deputy Martin to become suspicious that appellant wanted "to make sure something [was] concealed" in his vehicle. Deputy Martin testified that he could not allow appellant to reenter his vehicle at this point for officer safety, and appellant seemed concerned when Deputy Martin offered to turn off the vehicle for appellant. The other responding officer walked by the passenger side and noticed that a gun was in the backseat. The officers opened the back passenger door and inspected the gun, which they discovered was a BB gun.

Deputy Martin requested consent to search appellant's vehicle, which appellant refused. Deputy Martin then requested a K-9 to search the vehicle, and they waited for approximately fifty minutes for the K-9 unit to arrive. Deputy Martin explained that at the time of the traffic stop, the Jackson County Sheriff's Office did not have a K-9 unit, so he had to wait for a K-9 unit from Victoria County. Deputy Martin said that the K-9 unit was delayed because "[t]here was something happening . . . on the way headed to my location . . . [and] Victoria PD ended up getting into a pursuit." A video admitted into evidence shows the K-9 officer arrive at the scene, walk around the vehicle without the dog, and discover the drugs when he looked in the vehicle's driver's side window.[5] Appellant was arrested.[6]

---

[5] At trial, the K-9 officer testified that he walked around the vehicle to make sure that there was nothing around the vehicle that could harm his dog. He also looked in the windows for anything in plain sight. When he peered into the driver's side window, he saw the methamphetamine in the vehicle's floorboard near the pedals. Therefore, he did not use his dog in this case.

[6] The K-9 officer did not testify at the suppression hearing.

4

Appellant testified that he does not trust the officers of the Jackson County Sheriff's Office because they had been dishonest in the past. Appellant acknowledged that he told Deputy Martin that "Waco had dropped something" in his vehicle a "few days prior to" the traffic stop, which he "thought . . . was a little bit of weed." Appellant said, "I mean we're talking about like crumbs." On cross-examination, appellant admitted that he told Deputy Martin that he did not know what type of substance Waco dropped in his vehicle, but he did not mean to imply it was anything other than a minuscule amount of "weed."

The trial court denied appellant's motion to suppress, and he was convicted after a jury trial. This appeal followed.

## II.      MOTION TO SUPPRESS

### A.      Standard of Review & Applicable Law

We review a ruling on a motion to suppress under a bifurcated standard by giving total deference to the trial court's credibility-based factual determinations and reviewing pure legal questions de novo. *Armstrong v. State*, 713 S.W.3d 893, 902 (Tex. Crim. App. 2025). We will uphold the trial court's ruling "if it is reasonably supported by the record and is correct under any theory of law applicable to the case, even if the trial court did not purport to rely on that theory." *Medina v. State*, 565 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). A traffic stop must not be longer than necessary to complete the officer's investigation of the traffic violation. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The officer's authority "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* The officer must tailor his investigation to "checking the driver's license, determining whether there are outstanding warrants

5

against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

"[A] dog sniff . . . is not an ordinary incident of a traffic stop." *Id.* at 355–56. Thus, the officer may not prolong the duration of the traffic stop to wait for a dog sniff unless there is reasonable suspicion to believe that another offense has been or is being committed. *Fisher v. State*, 481 S.W.3d 403, 408 (Tex. App.—Texarkana 2015, pet. ref'd). If the officer develops a reasonable suspicion that another crime has occurred or is occurring, the officer may expand the scope of the initial investigation "to include the offense" and may "further detain the driver for a reasonable period of time in order to dispel or confirm the officer's reasonable suspicion of other criminal activity." *State v. Martinez*, 638 S.W.3d 740, 750–51 (Tex. App.—Eastland 2021, no pet.).

An officer has reasonable suspicion that a person has engaged in, is engaging in, or will engage in criminal activity, when viewed in the totality of the circumstances, the officer "had a particularized and objective basis to suspect wrongdoing" based on the totality of the objective information available. *Id.* at 747. Once the circumstances suggests that something illegal is afoot, the officer may, "as long as [he is acting] with reasonable diligence . . . pursue several plausible theories in attempting to resolve" the suspicion. *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004)). So, although the circumstances may seem innocent in isolation, when the combined circumstances "reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011). Additionally, an officer may "draw on his own

6

experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (further citations omitted)).

## B. Discussion

First, appellant argues that "there were no signs that [he] was involved in any additional 'criminal activity.'" Appellant points to evidence that the officers continued to talk with appellant and did not appear to "be in any heightened state of concern."

Deputy Martin testified at the suppression hearing that: (1) he had knowledge of appellant's recent alleged involvement in drug offenses; (2) instead of stopping his vehicle when the pursuit began, appellant drove past several available parking lots in what appeared to be an effort to conceal something; (3) appellant veered out of his lane, which according to Deputy Martin appeared as if appellant was reaching down and hiding something; (4) appellant requested to be let go a couple of times, which Deputy Martin "took note of" because it was "strange behavior"; (5) Deputy Martin interpreted appellant's requests to let him go as meaning "he's worried about [Deputy Martin] uncovering something else and he's wanting to get out of there as fast as he can"; (6) appellant appeared nervous and shaky; (7) appellant said he did not know if there was anything illegal in the car; and (8) appellant informed him that a friend had dropped narcotics in the vehicle. The trial court could have reasonably determined that taken together, the articulated facts regarding Deputy Martin's interaction with and observations of appellant sufficiently established reasonable suspicion that a separate crime, other than the traffic

7

violation that justified the traffic stop, had occurred or was occurring, especially given appellant's statement that his friend dropped drugs in his vehicle.[7] *See Martinez*, 638 S.W.3d at 751.

Next, appellant complains that the detention was unreasonably prolonged because the K-9 unit took approximately fifty minutes to arrive.

Deputy Martin immediately, within eight minutes of the traffic stop, requested the presence of a K-9 unit once it became apparent that a K-9 sniff would be necessary to dispel or confirm his suspicion that appellant had been, or was engaged in, other criminal activity, namely, the possession of drugs in the vehicle he had been driving. *See id.* at 754. Thus, Deputy Martin was diligent in pursuing the means of investigation that would likely confirm or dispel his suspicions. Deputy Martin explained that Jackson County lacked a K-9 unit, the K-9 unit had to travel from Victoria County, and that the K-9 unit had been delayed due to being involved in a pursuit.

Therefore, based on the totality of the circumstances, the record supports the trial court's conclusion that the detention was not unreasonably prolonged and the length of time between the initial stop and the arrival of the K-9 unit was not unreasonable under the circumstances. *See id.* at 754–55 (explaining that a thirty-eight-minute detention following a traffic stop was not an unreasonable time to wait for the K-9 unit); *Parker v.*

---

[7] Appellant complains that the trial court erroneously denied his motion to suppress under the incorrect finding that the dog sniff was positive for drugs. However, as explained above, the trial court properly determined that Officer Martin had reasonable suspicion that another crime had been or was being committed and was therefore justified in prolonging the stop to investigate the separate crime. Therefore, we need not address this complaint as it is not dispositive. *See* TEX. R. APP. P. 47.1; *see also Medina v. State*, 565 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (allowing affirmance of trial court's decision on motion to suppress "if it is reasonably supported by the record and is correct under any theory of law applicable to the case, even if the trial court did not purport to rely on that theory.").

8

*State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd) (holding that it was not unreasonable per se for officers to detain the defendant for seventy minutes following a traffic stop until the K-9 alerted on the defendant's vehicle); *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd) (concluding that the detention of the defendant for seventy-five minutes from the stop until the drug dog arrived was not unreasonable); *Josey v. State*, 981 S.W.2d 831, 840–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (determining that it was not unreasonable to detain a defendant for ninety minutes from the stop until the officers searched the vehicle).

Finally, appellant asserts that "[i]t defies logic for the [K-9] officer to have claimed the contraband was in plain view when looking inside the vehicle, but that it was not in plain view when they first searched the vehicle and discovered the BB gun." Appellant did not make this argument in his motion to suppress or at the suppression hearing. Therefore, it has not been preserved. *See* TEX. R. APP. P. 33.1(a)(1); *Resendez v. State*, 306 S.W.3d 308, 317 (Tex. Crim. App. 2009) (affirming the trial court's denial of appellant's motion to suppress because the appellant did not preserve his appellate argument for appeal); *Gomez v. State*, 459 S.W.3d 651, 668 (Tex. App.—Tyler 2015, pet. ref'd) (explaining that error is not preserved when the appellant failed to include an appellate argument in his motion to suppress or at the suppression hearing). Even if the issue was preserved, the trial court is entitled to believe or disbelieve witness testimony, and we must defer to its decisions in that regard. *See Armstrong*, 713 S.W.3d at 902. We

overrule appellant's first issue.

### III.     CRUEL AND UNUSUAL PUNISHMENT

By his second issue, appellant contends that the seventy-five-year sentence is grossly disproportionate to the crime committed.

**A.     Standard of Review & Applicable Law**

We review the trial court's sentence for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Generally, a sentence is not unconstitutional if it is within the legislatively determined range. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (stating that a "sentencer's discretion to impose any punishment within the prescribed range [is] essentially 'unfettered'"); *Foster v. State*, 525 S.W.3d 898, 912 (Tex. App.—Dallas 2017, pet. ref'd). The punishment range for a first-degree felony is "imprisonment . . . for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE ANN. § 12.32. Here, because the jury found appellant had previously been convicted of a felony other than a state-jail felony, the minimum punishment was enhanced to fifteen years' imprisonment. *See id.* § 12.42(c)(1).

However, "an individual's sentence may constitute cruel and unusual punishment, despite falling within the statutory range, if it is grossly disproportionate to the offense." *Alvarez v. State*, 525 S.W.3d 890, 892 (Tex. App.—Eastland 2017, pet. ref'd) (citing *Solem v. Helm*, 463 U.S. 277, 287 (1983)). A claim of excessive or disproportionate punishment is "embodied in the Constitution's ban on cruel and unusual punishment . . . [b]ut, this is a narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex.

Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see* U.S. CONST. amend. VIII. "[A] sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

In analyzing the sentence, "a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Id.* at 323. "In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* The Texas Court of Criminal Appeals "has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *Id.*

## B.      Discussion

Here, appellant's sentence falls within the prescribed punishment range for a first-degree felony enhanced by a repeat felony offender finding. *See id.*; *see also Trevino v. State*, 676 S.W.3d 726, 730 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). Nonetheless, even assuming appellant met a threshold inference that his sentence is grossly disproportionate to the offense he committed, appellant provided no evidence necessary for this Court to "compare the defendant's sentence with the sentences

11

received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *See Simpson*, 488 S.W.3d at 323, 324; *Trevino*, 676 S.W.3d at 732–33 (noting that "an unpreserved grossly disproportionate sentencing argument cannot conceivably persuade this Court and is thus frivolous"); *see also Esquivel v. State*, No. 13-21-00179-CR, 2022 WL 17492274, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2022, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause the trial court had no evidence before it that would allow it to engage in the comparative analysis detailed in *Simpson*, we cannot conclude it erred by sentencing [the appellant] within the statutory guidelines."). We overrule appellant's second issue.

## IV.    CONCLUSION

The trial court's judgment is affirmed.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
20th day of November, 2025.

12