# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO.  03-21-00372-CR
---

**William Barrie Bowlin, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. CR-17-0993-A, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

William Barrie Bowlin was charged with the felony offense of driving while intoxicated with two prior convictions for the same offense.  *See* Tex. Penal Code §§ 49.04, .09. The indictment contained enhancement paragraphs alleging that Bowlin had previously been convicted sequentially of two felony offenses.  *See id.* § 12.42.  At the end of the guilt-innocence phase, the jury found Bowlin guilty of the charged offense.   During the punishment phase, the trial court found the enhancement allegations to be true and sentenced Bowlin to thirty years' imprisonment.  *See id.*  In four issues on appeal, Bowlin challenges the sufficiency of the evidence supporting his conviction and supporting the trial court's finding of true for one of the enhancement allegations and argues that the trial court erred by admitting testimony from the State's expert witness and admitting his medical records.  We will affirm the trial court's judgment of conviction.

## BACKGROUND

On November 30, 2016, while in Hays County, Texas, Bowlin was arrested for driving while intoxicated. Shortly after his arrest, Bowlin was transported to an emergency room to be treated for his heart condition. Bowlin was later indicted for felony driving while intoxicated with two prior convictions for the same offense from 2005 and 2009. The indictment also contained two enhancement paragraphs alleging that Bowlin had previously been sequentially convicted of the felony offenses of driving while intoxicated in 1983 and aggravated assault in 2009. During trial, the State called the following witnesses: the investigating officer, the hospital lab manager, the hospital laboratory technician who tested Bowlin's blood samples, the emergency physician who treated Bowlin, and a social worker for the hospital. In addition, Bowlin's hospital medical records and the investigating officer's body-camera recording were admitted into evidence. After the State finished its case, Bowlin called his friend Audrey Sulpizio as a witness.

In his testimony, the investigating officer explained that he was driving along a loop that he patrols in Dripping Springs, Texas, when he noticed a disabled vehicle around 9:50 p.m. The officer recalled that the vehicle had not been there twenty to thirty minutes earlier when he passed the same area. The vehicle, a sports car with two seats, was stuck on a curb on a public road near Highway 290 with its engine running and its headlights on. A man later identified as Bowlin was standing near the vehicle, and no one else was near or inside the car. The officer approached Bowlin to speak with him and noticed the smell of alcohol on Bowlin's breath and red stains on Bowlin's face and shirt.

Bowlin told the officer that he was trying to turn his car around before he got stuck, but Bowlin did not say that anyone else had been driving the car. Bowlin admitted to the

2

officer that he had "a little bit" to drink that night and that his drinking might have contributed to how his vehicle got stuck. Bowlin was confused about where he was, initially stating that he was trying to reach a hotel but then repeatedly mentioning that he had just left and was trying to get back to his father's house in Midland, Texas. When asked where he currently lives, Bowlin stated that he lives in Midland but later said that he lives in Austin, Texas. His driver's license listed an Austin address. Bowlin told the officer that he believed that they were both currently in Odessa, Texas, and was surprised to learn that they were in Dripping Springs. Similarly, Bowlin told the investigating officer that he was eighty years old even though his driver's license indicated that he was in his sixties. When the officer asked Bowlin to retrieve proof of insurance from inside the car, Bowlin produced a document relating to an air conditioner. In his investigation, the officer learned that the car was registered to Bowlin and found a mostly empty wine bottle with a red liquid in the bottom resembling the color of the stains on Bowlin's face and shirt. The officer noticed several items in the passenger seat that would have made it difficult for anyone to sit there.

The officer asked Bowlin if he would submit to field-sobriety testing, and Bowlin stated that he would fail the tests but agreed to try. During the horizontal-gaze-nystagmus test, the officer noticed four out of six possible indicators of intoxication, and the officer had to repeatedly remind Bowlin to hold his head still during the test. During the walk-and-turn test, Bowlin began walking before the officer finished the instructions. At that point, Bowlin asked for a break and stated that he wanted to go to a hotel. Based on his observations, the officer decided to place Bowlin under arrest for driving while intoxicated. When the officer attempted to inquire whether Bowlin would be willing to provide a breath sample, Bowlin started wheezing and stated that he needed to go to the hospital because of a heart condition. At that point, the

3

officer called Emergency Medical Services ("EMS"), who responded to the scene, evaluated Bowlin, and recommended that Bowlin be taken to the hospital. The officer released Bowlin for medical treatment and then returned to his patrol duties. During his cross-examination, the officer admitted that he did not see Bowlin driving that night, did not see Bowlin in the driver's seat other than when the officer directed him to get in the vehicle, did not find any witnesses, and did not obtain any surveillance footage.

The recording from the officer's body camera is generally consistent with the officer's testimony. In addition, the recording shows various items on the passenger seat and in the passenger-seat floorboard, including large storage containers. The recording documents that the trunk was completely full and documents Bowlin telling the investigating officer and EMS personnel that he was eighty years old and ninety-nine years old.

Following the officer's testimony, the lab manager for the hospital where Bowlin was treated testified about a machine used by lab technicians for analyzing, among other things, alcohol concentration. Next, the hospital lab technician testified that she tested Bowlin's blood samples using the machine. Additionally, the emergency room physician who treated Bowlin on the night in question testified that during her treatment of Bowlin, she ordered that Bowlin's blood samples be tested for alcohol three times. The three tests performed at 11:12 p.m., 1:14 a.m., and 3:05 a.m. showed blood-alcohol concentrations of 294, 240, and 213 micrograms per milliliter, respectively. Additionally, the physician related that concentrations between 150 and 350 are toxic for medical purposes, that the three results were all in the toxic range, and that concentrations above 350 can result in a coma. However, the physician also cautioned against using those types of medical test results for deciding if someone was legally intoxicated. The hospital social worker testified that she talked with Bowlin a few hours after he arrived and that

4

he admitted to her that he had been drinking all day and that he drank "a fifth-and-a-half of liquor . . . that night."

When the State rested, Bowlin called his friend Sulpizio, who testified that she went on a few dates with Bowlin in 2016, that he called her on the day in question because he wanted to show her his new car, and that she got into his car while they were in Austin. Next, Sulpizio related that she noticed that "there was something wrong" with Bowlin because he was providing random answers to her questions and that she told him to pull over and let her drive the car. Further, Sulpizio explained that she drove the car to Dripping Springs, that Bowlin started arguing with her and told her to pull over, and that she drove the car onto the curb. Sulpizio testified that she left the area because she was mad at Bowlin and that she hitchhiked home.

During her cross-examination, Sulpizio admitted that on the following day she learned that Bowlin had been arrested for driving while intoxicated but testified that she did not inform the police that she had been driving because she was still angry with Bowlin from their fight the night before and was angry enough to let him take the fall for a crime that he did not commit. Later, Sulpizio explained that she met up with Bowlin again in 2017 when she was no longer angry with him and learned that he was either awaiting trial for driving while intoxicated or being punished for the offense, but she testified that she still did not inform the police that she drove the car because she thought the situation was being handled. When discussing her ride in Bowlin's car, Sulpizio stated that there was "not like a huge amount" of stuff inside the car and that she did not have to hold anything in her lap while she was sitting in the passenger seat before driving.

After considering the evidence presented at trial, the jury found Bowlin guilty of felony driving while intoxicated. During the punishment hearing, Bowlin pleaded not true to

5

both enhancement allegations. After Bowlin entered his pleas, an investigator for the Hays County district attorney's office testified regarding efforts that he undertook to determine whether Bowlin had been convicted of the offenses listed in the enhancement paragraphs, and a 1983 judgment for felony driving while intoxicated, a 2009 judgment for aggravated assault, and their accompanying paperwork were admitted as exhibits. At the conclusion of the punishment hearing, the trial court found the allegations true and sentenced Bowlin to thirty years' imprisonment.

Bowlin appeals the trial court's judgment of conviction.

## DISCUSSION

In four issues on appeal, Bowlin contends that the trial court erred by allowing the lab manager to testify as an expert witness, that the trial court erred by admitting into evidence his medical records from his treatment at the hospital, that the evidence presented regarding the 2009 enhancement allegation was insufficient to link him to the offense, and that the evidence is insufficient to support his conviction. Because the sufficiency challenge to the evidence of his conviction could result "in greater relief than his other issue[s]," we address that issue first. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

### Sufficiency of the Evidence

In his fourth issue, Bowlin contends that the evidence is insufficient to support his conviction.[1] As support for this argument, Bowlin notes that none of the State's witnesses testified that they observed him driving the car, that no surveillance footage was admitted into

---

[1] In his brief, Bowlin challenges the legal and factual sufficiency of the evidence. However, the Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence supporting a conviction. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

evidence showing him driving the car, and that the investigating officer found him outside of the car. Additionally, Bowlin asserts that the only witness to the events in question, Sulpizio, testified that she drove the car in Hays County on the night in question and caused the car to get stuck on the curb before leaving the scene. Accordingly, Bowlin urges that the evidence is insufficient to support his conviction and that this Court should reverse his conviction and render a judgment of acquittal.

Under the Penal Code, an individual commits the offense of driving while intoxicated if he "is intoxicated while operating a motor vehicle in a public place." *See* Tex. Penal Code § 49.04. When presenting his arguments, Bowlin does not dispute that the evidence established that he was intoxicated on the night in question or that he and the vehicle were in a public place; instead, he argues that the evidence did not establish that he operated his vehicle during the relevant time period. Although the Penal Code does not define the word "operate," the Court of Criminal Appeals has explained that, for sufficiency reviews, "a person 'operates' a vehicle when 'the totality of the circumstances [ ] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.'" *Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *see Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (stating that term operating is interpreted broadly). Even though "driving does involve operation" of a motor vehicle, "operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389.

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319

7

(1979)).  In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted."  *Id.*  "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses."  *Id.*  "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination."  *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."  *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  Appellate courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt."  *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt."  *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

First, Bowlin told the investigating officer that he had been driving that night when he drove the car over the curb while trying to turn the car around.  Those admissions were recorded by the officer's body camera.  *Cf. Foley v. State*, 327 S.W.3d 907, 915 (Tex. App.—

8

Corpus Christi-Edinburg 2010, pet. ref'd) (overruling sufficiency challenge where defendant "admitted that he had been driving"); *Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at *2 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (op., not designated for publication) (determining that evidence was sufficient to establish that defendant operated vehicle because, among other reasons, defendant admitted to driving his car "to the parking lot where he was found").

Although Bowlin correctly points out that Sulpizio testified that she was the person driving the car in Hays County on the night in question, the jury was free to determine what, if any, weight to give her testimony. In performing its credibility determination, the jury could have considered Bowlin's conflicting admission that he was driving and other portions of Sulpizio's testimony in which she testified that Bowlin's car was not that cluttered on the inside and that she did not have to hold anything in her lap when sitting in the passenger seat of the two-seater car and then compared that testimony with the video recording of Bowlin's car showing the trunk full with various items and large storage containers and other items on the passenger seat and floorboard. The jury could have also considered other portions of Sulpizio's testimony in which she admitted that she learned that Bowlin was either being punished for driving while intoxicated or would be tried for that offense but did not ever inform the police that she was the one driving that night. *Cf. Rezaei v. State*, No. 03-99-00303-CR, 2000 WL 45550, at *4 (Tex. App.—Austin Jan. 21, 2000, no pet.) (op., not designated for publication) (noting that when assessing credibility of witness's testimony, factfinder could have considered that, until trial, witness, who was friend of appellant, "did not tell the police or anyone else that appellant did not participate in the burglary").

9

Moreover, other evidence was presented at trial indicating that Bowlin operated the vehicle. The investigating officer found Bowlin near the stuck vehicle. The vehicle's engine was running, and the keys were in the ignition. *Cf. Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015) (concluding that "because Appellant was the only person found in the area, a factfinder could have also reasonably inferred that Appellant drove his vehicle to the location at which he was found"). The officer did not see anyone else near the car, and the officer did not see the vehicle when he passed by the area twenty to thirty minutes earlier. *Cf. Hearne v. State*, 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (concluding that evidence was legally sufficient to establish operation of vehicle where, among other reasons, no one other than defendant was found near scene). The car only had two seats, and there were large objects on the passenger seat and floorboard, making it difficult for anyone other than the driver to be in the vehicle. Further, Bowlin did not mention being a passenger or anyone else driving the vehicle that night. Additionally, the car registration showed that Bowlin owned the vehicle.

Given our standard of review and in light of the evidence presented during trial as well as the reasonable inferences that the jury was free to make from that evidence, we must conclude that the evidence is sufficient to establish that Bowlin operated his motor vehicle before the vehicle became stuck on the curb. Accordingly, we overrule Bowlin's fourth issue on appeal.

**Testimony from the Lab Manager**

In his first issue on appeal, Bowlin contends that the trial court abused its discretion by overruling his objection to the lab manager's testifying. Outside the jury's presence, the lab manager explained that her lab uses a machine called a Beckman Coulter and discussed her experience with and knowledge of the machine and the testing results that it

10

produces, including results regarding blood-alcohol concentrations. The lab manager explained that it is a widely accepted practice for labs to use this type of machine. However, the lab manager admitted that she was trained to use the machine by coworkers rather than through official training with the company that makes the machines and that she did not have any specific training in blood toxicology. She testified that she did not know what the chemical used in part of the testing was, the error rate for the machine, or any peer reviewed articles discussing the reliability for the machine. She could not compare the machine's testing results with gas chromatography used in other alcohol testing. During the hearing, Bowlin argued that the lab manager was not qualified to provide expert testimony regarding testing performed by the machine and that her testimony was unreliable. Accordingly, Bowlin asserted that the lab manager should not be allowed to testify as an expert witness to provide the predicate for the admission of the results from the hospital machine's blood-alcohol testing. The trial court denied the objection, and Bowlin reasserts on appeal his prior challenges to the lab manager's testimony.

In her testimony before the jury, the lab manager explained that she has a degree in medical technology, that one of her responsibilities is to ensure that the lab technicians perform testing that complies with national regulations, that the lab is accredited by the American Society of Clinical Pathologists, that the hospital's lab uses a Beckman Coulter for analyzing alcohol concentrations, that she was trained to use the machine by individuals who received training from the machine's manufacturer, that the machine is calibrated by using known standards provided by the manufacturer, that she is in charge of calibrating the machine, that physicians rely on the results of the testing, that the machine was in good working order when the tests at issue were performed, and that the testing was in compliance with the laboratory's policies. When describing the testing process, the lab manager explained that the

11

machine aspirates some of the sample, mixes it with chemicals provided by the manufacturer, and prints the results of the testing.

Even if the trial court abused its discretion by allowing the lab manager to testify, we would be unable to sustain Bowlin's issue on appeal. "The erroneous admission of expert testimony is non-constitutional error." *Sandoval v. State*, 409 S.W.3d 259, 293 (Tex. App.—Austin 2013, no pet.). Under that standard, errors "must be disregarded" if they did "not affect substantial rights." Tex. R. App. P. 44.2(b). A defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the reviewing court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect," then the defendant's substantial rights were not affected. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). When analyzing the potential harm from the erroneous admission of expert testimony, appellate courts may consider, among other things, the following:

> (1) the strength of the evidence of the appellant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during arguments.

*Sandoval*, 409 S.W.3d at 293-94.

Regarding the evidence of Bowlin's guilt, as set out above, Bowlin was convicted of driving while intoxicated, and as set out above, extensive evidence was presented establishing that Bowlin operated his vehicle on the night in question. *See* Tex. Penal Code § 49.04.

12

Addressing the other elements, Bowlin did not dispute at trial that the roadway was a public place as defined by the Penal Code. *See id.* § 1.07(a)(40) ("'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets [and] highways . . . "). Moreover, the evidence presented at trial demonstrated that the road was near the intersection of a highway, that the road passed two shopping centers with exits onto the road, that other drivers were travelling on the road, and that there were no barriers restricting entry to the road. *See Thacker v. State*, No. 03-15-00079-CR, 2015 WL 6841415, at *5 (Tex. App.—Austin Nov. 6, 2015, pet. ref'd) (mem. op., not designated for publication); *see also Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.) (noting that "the relevant inquiry is whether the public has access to it").

Turning to the intoxication element, overwhelming evidence was presented establishing that Bowlin was intoxicated during the time in question, which under the Penal Code occurs when a person does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or has "an alcohol concentration of 0.08 or more." Tex. Penal Code § 49.01(2).

Bowlin had red stains on his mouth and shirt matching residue found in a wine bottle in the car, and his breath smelled like alcohol. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the breath" is evidence of intoxication); *Priego*, 457 S.W.3d at 570, 571 (upholding conviction because, among other reasons, evidence showed that there was partially consumed bottle of alcohol inside car and that defendant smelled like alcohol). Bowlin repeatedly told the investigating officer that he had just left his father's house in Midland and was trying to return to that house, that he believed he was

13

in Odessa, and that he lived in Midland even though his driver's license listed an Austin address. Similarly, Bowlin appeared confused about his age and told the investigating officer and EMS personnel that he was decades older than what was reflected on his driver's license. In addition, Bowlin admitted to drinking and told the investigating officer that his drinking might have played a role in his car getting stuck. When asked to retrieve proof of insurance, Bowlin instead produced a document pertaining to an air conditioner.

Additionally, Bowlin informed the officer that he believed that he would fail the field-sobriety tests, displayed four of six possible cues of intoxication during the horizontal gaze nystagmus test, had to be told repeatedly to hold his head still during the test, did not finish listening to the instructions for the walk-and-turn test before starting to walk, and subsequently asked for a break from the testing. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (listing "inability to perform field sobriety tests or follow directions . . . [and] any admissions by the defendant concerning what, when, and how much he had been drinking" as "evidence that would logically raise an inference that the defendant was intoxicated"). Further, Bowlin told the hospital's social worker that he had been drinking all day and drank a fifth and a half of liquor that night.

The evidence summarized above provides overwhelming evidence that Bowlin was intoxicated apart from the evidence pertaining to the results of blood-alcohol testing performed at the hospital. Moreover, although the lab manager's testimony was presented to help establish the reliability of the results of the blood-alcohol testing and although the results of the testing produced blood-alcohol levels that were all considered toxic, we note that the treating physician warned against using the medical test results for the purpose of determining whether Bowlin was legally intoxicated either because his blood-alcohol concentration was above

14

the legal limit or because the ingestion of alcohol caused him to suffer mental or physical impairment. Specifically, the doctor testified that the test results use different units and a different scale than what would be used in determining if someone was above the 0.08 limit. Further, although the doctor agreed that the three tests produced results that qualified as toxic for medical purposes, she explained that the level of physical or mental impairment would vary depending on the person and that some people would not exhibit any symptoms of impairment at those levels.

In light of the preceding, we conclude that the first factor weighs strongly in favor of a finding that Bowlin was not harmed.

Turning to whether the jury heard similar evidence through another source, we note that the lab technician testified regarding some of the same topics that the lab manager did without objection. *Cf. Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that error in improper admission of evidence is harmless if same or similar evidence is admitted without objection during trial). For example, the lab technician testified that she received training on how to use the Beckman Coulter machine, that she was familiar with the alcohol testing that can be done on that machine, and that she complied with the lab's procedures for testing the samples. However, the lab manager also testified about topics that were not covered by other witnesses, including describing how the machine produces results.

Therefore, we conclude that this factor weighs in favor of a finding that Bowlin was harmed.

Regarding the strengths and weaknesses of the lab manager's testimony, we note that the lab manager provided a description of how the machine produces results by mixing an aspirated blood sample with chemicals provided by the manufacturer and explained that testing

15

performed at the accredited lab complies with national standards, that physicians rely on the results produced by the machine, that the machine was calibrated and in good working order on the day of the testing, and that the testing complied with the laboratory's policies. However, the lab manager's description of how the results are determined was brief and did not set out the scientific principles underlying the testing process. Further, the lab manager did not describe the accuracy of the results and did not provide an explanation regarding how the results produced by the machine could be used to determine if the patient was intoxicated as that term is defined in the Penal Code. *See* Tex. Penal Code § 49.01(2). Additionally, the lab manager's opinion was undermined by some of her own testimony. For example, she testified that the lab no longer uses the machine that analyzed Bowlin's blood samples, that she had never testified about the reliability of the machine before, and that her training on the machine was provided by her coworkers rather than through formal training with the manufacturer. *Cf. Sandoval*, 409 S.W.3d at 295 (noting that expert's testimony was "not particularly powerful"). Similarly, as discussed earlier, the treating physician highlighted problems with using the results of the medical tests as proof of legal intoxication and, thereby, questioned the probative value of the blood-test results for which the lab manager's testimony was used as a predicate for admission.

Accordingly, we conclude that this factor weighs in favor of a finding that Bowlin was not harmed.

Turning to the final factor, we note that the State did not refer to the lab manager's testimony during its closing argument and only briefly mentioned the blood-alcohol testing. *Cf. id.* (observing that State did not emphasize testimony from expert). Instead, the State emphasized the other evidence establishing Bowlin's guilt and attacked the credibility of Sulpizio's testimony. On the other hand, Bowlin informed the jury during his opening argument

16

that they will be watching a recording from the investigating officer's body camera on which Bowlin "does not make any sense" and conceded that the jury may conclude based on the video that he was "publicly intoxicated." Similarly, during his closing argument, Bowlin conceded that he was "guilty of being intoxicated in a public place" but argued that he did not drive while he was intoxicated. Further, Bowlin repeatedly asserted that the evidence established that he was highly intoxicated as part of his defensive strategy of arguing that he was too intoxicated to know whether he had driven that night when he admitted to the investigating officer that he had been driving.

Therefore, this final factor also weighs in favor of a finding that Bowlin was not harmed.

On this record and given our resolution of the factors above, we conclude that any error from the admission of the lab manager's testimony did not have a substantial and injurious effect in determining the jury's verdict. For these reasons, we overrule Bowlin's first issue on appeal.

**Admission of Medical Records**

In his second issue on appeal, Bowlin contends that the trial court abused its discretion by overruling his objection to the admission of his medical records from the hospital, including the blood-alcohol test results, during the testimony from his treating physician. At trial, Bowlin argued that the admission of the evidence violated his confrontation rights because he had not been allowed to cross-examine the nurse who drew the blood used in the alcohol testing. *See* U.S. Const. amends. VI, XIV. Bowlin asserts on appeal that the admission of his medical records violated his confrontation rights because they were prepared for the purpose of

17

prosecuting him and not for medical treatment and, therefore, were testimonial in nature. Further, Bowlin contends that the erroneous admission of the evidence constituted constitutional error warranting a reversal of his conviction. *See* Tex. R. App. P. 44.2(a).[2]

Under the Sixth Amendment, "the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The United States Supreme Court has explained that confrontation rights apply not only to in-court testimony but also to out-of-court statements that are testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). The Confrontation Clause prohibits the admission of testimonial hearsay unless two criteria are met: the declarant is unavailable to testify, and the defendant had a prior opportunity to cross examine the declarant. *Id.* at 68. This rule applies even if the statement falls within a "firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2006). A determination regarding whether an out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

"Testimonial" statements are those made under circumstances leading an objective witness to reasonably believe that the statements would be available for use at a later trial. *See Wall*, 184 S.W.3d at 735. Stated differently, a statement is testimonial when the circumstances demonstrate that the primary purpose of obtaining it is to establish past events in order to further a criminal prosecution. *See De La Paz*, 273 S.W.3d at 680. However, if the

---

[2] In his brief, Bowlin contends that the State admitted during its opening argument that the purpose of taking Bowlin to the hospital was to have his blood drawn for law-enforcement purposes. However, in the portion of the opening statement that Bowlin references, the State described how the investigating officer initially approached Bowlin to see if he needed help but then realized that he may have committed the offense of driving while intoxicated. The State did not assert that the investigating officer arranged for Bowlin to go to the hospital for the purpose of obtaining blood-alcohol testing to further the investigation.

18

primary purpose of the statement is something other than to further a criminal prosecution, "the Confrontation Clause does not require such statements to be subject to the crucible of cross examination." *See Michigan v. Bryant*, 562 U.S. 344, 361 (2011). For example, medical records prepared for the primary purpose of treatment are not testimonial. *See Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd).

As support for his arguments that his confrontation rights were violated, Bowlin primarily relies on the following opinion by the United States Supreme Court: *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). In that case, the trial court admitted certificates reporting the results of forensic testing performed on material seized by the police. *Id.* at 307. In particular, the police seized plastic bags containing a white powder during a search of the defendant and sent the "evidence to a state laboratory required by law to conduct chemical analysis upon police request." *Id.* at 308. At trial, the defendant objected to the admission of sworn "certificates of analysis" from analysts with the laboratory describing the results of testing performed on the substance. *Id.* at 308-09. The defendant asserted that the Confrontation Clause required the analysts who performed the testing to testify, and the trial court overruled the objection. *Id.* at 309.

The Supreme Court determined that the certificates were really affidavits and were testimonial statements, constituting a solemn declaration designed to establish or prove a fact. *Id.* at 310. Further, the Supreme Court explained that the affidavits were made under circumstances that would lead someone to believe that the document would be available for use at trial and that the state law authorizing the affidavits demonstrated that the sole purpose of the affidavits was to provide evidence of the composition, weight, and quality of the analyzed substances. *Id.* at 311. Accordingly, the Supreme Court determined that the affidavits were

19

testimonial statements, that the analysts were witnesses under the Sixth Amendment, and that the defendant was entitled to confront the analysts absent a showing that they were unavailable and that the defendant had a prior opportunity to cross-examine them. *Id.*; *see also Bullcoming v. New Mexico*, 564 U.S. 647, 661, 665 (2011) (concluding that forensic certification regarding blood-alcohol testing made by analyst working for "a state laboratory required by law to assist in police investigations" was testimonial and that state violated defendant's confrontation rights by not calling analyst who prepared certification because analysts who write reports that prosecution introduces must be made available for confrontation).

The circumstances in this case differ significantly from those present in *Melendez-Diaz*. Here, the reports were not prepared at the directives of the police or at a laboratory designed with the purpose of aiding police investigations. Instead, the investigating officer called EMS after Bowlin began experiencing a medical condition, and the investigating officer released Bowlin so that he could be treated at a nearby hospital. Further, the investigating officer did not go inside the hospital or interact with the treating personnel, and he returned to his duties after Bowlin went to the hospital. Moreover, Bowlin's treating physician explained that she ordered alcohol testing for the purpose of making medical decisions about how to proceed with treatment. Additionally, the alcohol testing was only one component of the medical records, and the remainder of the medical records establish that the alcohol testing and other assessments were performed as part of Bowlin's treatment or diagnosis.

Accordingly, the medical records, including the results of blood testing performed on Bowlin at the hospital, were created for the primary purpose of medical diagnosis and treatment and are, therefore, not testimonial. *Cf. Melendez-Diaz*, 557 U.S. at 312 n.2 (explaining that "medical reports created for treatment purposes" are not testimonial). Therefore, the

20

admission of the medical records did not violate the Confrontation Clause. *See Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that numerous Texas courts agree that medical reports are non-testimonial); *see also Garza v. State*, No. 13-19-00472-CR, 2021 WL 822301, at *6 (Tex. App.—Corpus Christi–Edinburg Mar. 4, 2021, no pet.) (mem. op., not designated for publication) (determining that defendant's confrontation rights were not violated by admission of medical records created for medical purpose).[3]

In any event, even if the records at issue could be considered testimonial in nature, we would be unable to sustain Bowlin's issue on appeal. As set out above, Bowlin argues that his confrontation rights were violated when the medical records were admitted into evidence because he was unable to cross-examine the nurse who drew blood samples for the alcohol testing. However, the Confrontation Clause does not mandate "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz*, 557 U.S. at 311 n.1. If the person who performed a blood draw did not play a role in the blood analysis or contribute to the report, the Confrontation Clause does not require

---

[3] As support, Bowlin also points to an opinion from another intermediate court of appeals. *See Kou v. State*, 536 S.W.3d 535 (Tex. App.—San Antonio 2017, pet. ref'd). In *Kou*, a sexual-assault-nurse examiner ("SANE") interviewed a victim of alleged sexual abuse, took a swab from a lesion, and sent the sample to a lab for a herpes test. *Id.* at 539. During trial, the SANE testified that the test results showed a positive herpes result, but the lab analyst did not testify. *Id.* at 544. Our sister court determined that the lab results were testimonial because they were reported to the SANE in a manner that would lead an objective witness to reasonably believe that the statement would be available later for use at trial. *Id.*; *see also id.* (noting that information here was not communicated by victim to SANE but by lab technician to SANE). When determining that the lab results were testimonial, our sister court noted that the record did not show that the results were used for anything other than prosecution. *Id.* at 545. In contrast, in the current case, Bowlin's treating physician testified that she ordered the tests for purposes of medical treatment. Further, unlike in *Kou*, the lab technician who performed the blood tests was called as a witness and subject to cross-examination.

the person who performed the blood draw to testify before the results may be admitted into evidence. *Adkins v. State*, 418 S.W.3d 856, 861 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Willits v. State*, No. 08-17-00072-CR, 2019 WL 364612, at *6 (Tex. App.— El Paso Jan. 30, 2019, no pet.) (op., not designated for publication); *Alford v. State*, No. 02-16-00030-CR, 2017 WL 370939, at *1 (Tex. App.—Fort Worth Jan. 26, 2017, pet. ref'd) (mem. op., not designated for publication).

In this case, the lab technician testified that she performed all the requested laboratory testing for Bowlin and that the reports show that she performed the testing in question. Further, the lab technician was subject to cross-examination by Bowlin at trial. Under these circumstances, the Confrontation Clause did not require the nurse who performed the blood draw to testify. Accordingly, regardless of whether the medical records were testimonial, Bowlin's confrontation rights were not violated. *See Adkins*, 418 S.W.3d at 862.

For these reasons, we overrule Bowlin's second issue on appeal.

**Enhancement Allegation**

In his third issue on appeal, Bowlin challenges the sufficiency of the evidence supporting the trial court's finding of true pertaining to the second enhancement allegation regarding a 2009 conviction for aggravated assault. More specifically, Bowlin argues that the evidence linking him to the prior offense was insufficient because no evidence was admitted during the punishment phase regarding what his date of birth and social security number were. When presenting this argument, Bowlin acknowledges that the investigator generally testified during the punishment hearing that the social security number and date of birth listed in the 2009 judgment and paperwork were the same as his, but he argues that this testimony was conclusory

22

and insufficient to support the trial court's determination. For these reasons, Bowlin contends that his judgment of conviction should be reversed and that the case should be remanded for further proceedings.

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* "While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways," including through the defendant's stipulation or admission, through testimony by a person who observed the defendant being convicted and can identify the defendant as the person previously convicted, or through documentary proof that contains sufficient information to establish the existence of the prior conviction and the defendant's identity as the person previously convicted. *Id.* at 921-22.

Links to the defendant can be shown through different means, including allowing the jury to compare photographs of the person previously convicted with the appearance of the defendant at trial or providing identifying information for the person previously convicted "such as name, sex, height, eye color, hair color, and date of birth." *See Williams v. State*, 946 S.W.2d 886, 895 (Tex. App.—Waco 1997, no pet.). No "best evidence" rule exists requiring that a prior conviction be proven by any particular document or type of evidence. *Flowers*, 220 S.W.3d at 921. "In proving prior convictions, identity often includes the use of a combination of identifiers, and '[e]ach case is to be judged on its own individual merits.'" *Henry v. State*, 466 S.W.3d 294, 301 (Tex. App.—Texarkana 2015) (quoting *Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984) (op. on reh'g)), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016).

23

"The trier of fact must consider the evidence as a whole, as each piece of evidence may provide little meaning if considered in isolation." *Henry v. State*, 509 S.W.3d 915, 919 (Tex. Crim. App. 2016).

Appellate courts review the sufficiency of the evidence linking a defendant to a prior conviction used for enhancement purposes by considering all the evidence in the light most favorable to the trial court's determination and deciding whether a rational trier of fact could have made the determination beyond a reasonable doubt. *See id.* If the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, "then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Flowers*, 220 S.W.3d at 923. Provided that the proof of identity is sufficient, no error will be found on appeal. *Littles*, 726 S.W.2d at 32.

Before the exhibit pertaining to the 2009 enhancement was admitted, the trial court admitted as an exhibit Bowlin's booking sheet for the current offense. The exhibit was certified as a true and correct copy by the Hays County jail records clerk. The booking sheet, like the indictment, lists the name "William Barrie Bowlin." The indictment and the medical records admitted during the guilt-innocence phase list Bowlin's date of birth. *Cf. Bush v. State*, 642 S.W.2d 787, 789 (Tex. Crim. App. 1982) (considering evidence from guilt-innocence when determining if enhancement allegation was proven). The booking sheet also lists Bowlin's date of birth, social security number, and state identification number (SID) given to individuals in jails.

The exhibit pertaining to the 2009 enhancement was admitted during the testimony of the investigator. The exhibit contains a 2009 judgment adjudicating guilt for the offense of aggravated assault and the accompanying paperwork. The trial court clerk certified

that the documents were "true and correct" copies of the documents in her office. *See Flowers*, 220 S.W.3d at 921 (noting that certified copies of final judgment and sentence is "a preferred and convenient" way of proving prior conviction). The judgment and paperwork identify the defendant in that case as "William Barrie Bowlin" and list the same birthdate, social security number, and SID number as those found in the booking sheet. Additionally, the investigator testified that the social security number, date of birth, and name appearing on the 2009 judgment and paperwork are the same as the social security number, date of birth, and name appearing in Bowlin's booking report.

Finally, the 2009 enhancement was further linked to Bowlin through the testimony and other evidence pertaining to the 1983 enhancement concerning a felony conviction for driving while intoxicated. The judgment of conviction for the 1983 offense and accompanying paperwork list the defendant as "William Barrie Bowlin" and the defendant's birthday as being the same as the birthday set out in the booking sheet in this case. Further, after detailing his training and qualifications in making "ink-to-ink" fingerprint comparisons, the investigator explained that the fingerprint he examined in the 1983 paperwork matched one of Bowlin's fingerprints in his booking sheet. The 1983 offense is listed as a prior offense in the paperwork for the 2009 enhancement, and the cause number, year of conviction, and county of conviction for the 1983 offense listed in the 2009 paperwork match the information provided in the paperwork for the 1983 enhancement allegation.

Given our standard of review and considering the reasonable inferences that the trial court could have made from this evidence, *see Eustis*, 191 S.W.3d at 884, we conclude that the trial court could have reasonably determined that the individual who is the subject of the 2009 judgment and paperwork was Bowlin and, accordingly, that the evidence is legally

25

sufficient to link Bowlin to the felony conviction for aggravated assault serving as a basis for the second enhancement allegation, *see Barnes v. State*, 585 S.W.3d 643, 650 (Tex. App.—Texarkana 2019) (determining that prior convictions were sufficiently linked to defendant by certified judgments bearing defendant's name and additional linking information, including defendant's birthdate, social security number, or SID, and distinguishing those prior convictions from paperwork for others only containing defendant's name and signature), *rev'd on other grounds*, No. PD-1072-19, 2021 WL 476483 (Tex. Crim. App. Feb. 10, 2021) (op., not designated for publication); *Coop v. State,* No. 04-97-00767-CR, 2000 WL 36096, at *1 (Tex. App.—San Antonio Dec. 30, 1999, no pet.) (op., not designated for publication) (referring to defendant's SID number as evidence linking defendant to prior convictions).

For these reasons, we overrule Bowlin's third issue on appeal.

## CONCLUSION

Having overruled all of Bowlin's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   August 12, 2022

Do Not Publish

26