

# NUMBER 13-22-00076-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHRISTINA LYNN NAVARRO,**                                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

### On appeal from the 36th District Court
### of San Patricio County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Benavides

A jury found appellant Christina Lynn Navarro guilty of possession of a controlled substance, penalty group one, in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). The trial court sentenced Navarro to ten years' imprisonment, probated for five years, and placed her

on community supervision. By a single issue, Navarro contends the evidence was insufficient to prove that she intentionally or knowingly possessed methamphetamine. We affirm.

## I.  BACKGROUND

On December 15, 2021, trial commenced on the above charge. According to Sergeant Philip R. Hernandez of the Sinton Police Department, on March 20, 2019, he was driving behind a red Honda when he noticed the light illuminating the license plate was defective. He conducted a traffic stop and made contact with Navarro, who was driving the red Honda, and her passenger, Imeih Esquivel. An edited portion of Sergeant Hernandez's body camera footage from the stop was admitted into evidence. We have transcribed relevant portions of the video to the extent necessary to resolve the issue before us.

The video shows that, after asking Navarro for her license, Sergeant Hernandez learned that neither Navarro nor Esquivel had a valid driver's license. Navarro explained that she was craving a "moon pie" and so she borrowed her partner, Steve's, vehicle. At trial, Sergeant Hernandez testified that he confirmed the vehicle was registered to a Steve Warren. He also stated that during his initial interaction with Navarro, she seemed nervous and "animated," and would "talk[] about things that weren't relevant to the contact."

In the footage, Sergeant Hernandez asked Navarro whether there was "anything in that vehicle" he should be concerned about, including narcotics. Navarro repeatedly assured Sergeant Hernandez that there was nothing of concern in the vehicle. She

2

explained that she and Esquivel were "laying down watching 'Avengers,'" when she suggested the two go to the store to get moon pies. Navarro denied having ever used narcotics and told Sergeant Hernandez that if his suspicions were based on the appearance of her teeth, it was "really not cool." Esquivel was questioned separately. She explained that Navarro had called her and asked her to accompany her to the store. Esquivel confirmed she had a prior history with narcotics, and the last time she smoked methamphetamine was either the "day before yesterday" or "yesterday."

Sergeant Hernandez asked Navarro for permission to search the vehicle, and she responded, "Let me ask Steve. Because I don't want to let—let you look in there and then Steve have [sic] something in there and then I'm the one that's in trouble because I know that I'm in possession of the car." A few minutes later, Navarro stated, unprompted, "I sure hope he doesn't have anything in there." Initially, Navarro denied consent to search the vehicle. However, after Sergeant Hernandez informed the women that he requested a K-9 unit, Navarro told him to search the vehicle, stating "Go ahead, yes, search the car. Either way I'm gonna get arrested." At some point, Officer Justin Martinez of the Sinton Police Department arrived to assist Sergeant Hernandez. Navarro and Esquivel were placed in handcuffs while the officers searched the vehicle. Officer Martinez asked Navarro why she felt she would be arrested, and Navarro responded, "Well, I'm sure there's something in there, because Steve does do [methamphetamine]."

When the officers began searching the vehicle, they discussed finding a "brand new" pipe next to where Navarro was sitting. After additional searching, Officer Martinez retrieved a bag of methamphetamine and a used pipe from behind a panel on the driver's

3

side of the center console. At trial, Sergeant Hernandez testified that, although possible, it would be "very difficult" for a passenger to hide contraband in that location.

In the footage, Sergeant Hernandez confronted Navarro with the bag of methamphetamine and paraphernalia, asking, "So, you want to tell me about this?" Navarro responded, "Come on, that's not mine. Aw, f***king Steve." Officer Martinez informed Navarro that the hidden pipe "was nice and warm still," and "it was freshly used." Navarro urged, "That's not mine, I'm telling you, [Steve] just got there, asked to use the shower, I said, 'okay, can I borrow your store [sic] to go get the things—to get the moon pies,' and that was it." Sergeant Hernandez asked Esquivel whether the bag of methamphetamine was hers, to which Navarro interjected, "It's not hers, I saw her got [sic] in the car. She didn't take nothing [sic] out of her person or anything, we just went to the store and that's it." A laboratory report admitted into evidence at trial confirmed the recovered bag contained methamphetamine.

The jury returned a guilty verdict, and Navarro was sentenced by the trial court as described above. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Navarro argues the evidence was insufficient to establish the *mens rea* element of the offense.

### A.    Standard of Review & Applicable Law

"When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a

4

reasonable doubt." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (first citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); and then citing *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)). The essential elements in this case are: (1) the defendant exercised care, custody, control or management over the controlled substance; and (2) the defendant knew the substance was contraband. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); TEX. HEALTH & SAFETY CODE ANN. § 481.115 (providing generally that "a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1," including methamphetamine).

"To establish the first element, the State must prove that the defendant's connection with the controlled substance is more than just fortuitous." *Medina*, 565 S.W.3d at 873. "Mere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "Additionally, when narcotics are secreted, the State must address whether the accused knew of the existence of the secret place and its contents." *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Thus, a defendant must "be affirmatively linked with the drugs [s]he allegedly possessed, but this link need no[t] . . . be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt." *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). Some of the factors "which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession'" include:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12. It is not the number of links that is dispositive, but the combined logical force of all the evidence, direct and circumstantial. *Id.* at 162. "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 318–19).

## B.      Analysis

Both Esquivel and Navarro were present when the search was conducted. However, the methamphetamine and used pipe were secreted behind a panel on the driver's side of the center console. Although Esquivel acknowledged her prior history with methamphetamine, Navarro insisted that the contraband was not Esquivel's. Sergeant Hernandez also testified that it would be "very difficult" for the passenger to have concealed the drugs in the compartment on the driver's side. Regardless, "possession need not be exclusive," so long as there is some affirmative link between the defendant

6

and the drug. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

In her brief, Navarro claims that the absence of evidence concerning certain affirmative links renders the evidence insufficient to support the jury's verdict. For instance, although Sergeant Hernandez stated that Navarro seemed nervous and "animated," no evidence was presented to indicate that Navarro attempted to flee, made furtive gestures, or was under the influence of narcotics. *See Evans*, 202 S.W.3d at 162 n.12. There was also no evidence presented that any odor of methamphetamine was emanating from the inside of the vehicle. *See id.* Navarro and Esquivel had differing accounts concerning the manner in which Navarro proposed the idea of visiting a store, but this minor conflict is not so relevant as to create a link between Navarro and the contraband. *See Jenkins v. State*, 76 S.W.3d 709, 717 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd). "But the 'absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present.'" *Jones v. State*, 466 S.W.3d 252, 260 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)).

Navarro explained that she had Steve's permission to borrow his car. This supports the conclusion that Navarro had the right to possess the place where the drugs were found, which is a link connecting Navarro to the contraband. *See Evans*, 202 S.W.3d at 162 n.12 (providing that "whether the defendant owned or had the right to possess the place where the drugs were found" is a factor that may circumstantially establish a knowing possession); *Barbosa v. State*, 537 S.W.3d 640, 646 (Tex. App.—San Antonio

7

2017, no pet.); *see also Gomez v. State*, Nos. 01-18-00694-CR & 01-18-00695-CR, 2019 WL 2932848, at *5 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op., not designated for publication). More importantly, when Navarro realized that a search of the vehicle was likely inevitable, she transitioned from being adamant that no drugs were in the vehicle to confident that there were drugs in the vehicle. Without appearing to contact Steve, she was "sure" the car contained drugs. However, Navarro did not provide a reason as to how she knew there would be drugs in the car, other than to state that Steve used drugs. While it may have been reasonable for the jury to conclude that Navarro knew the police would find drugs in the vehicle because of Steve's drug use, it was also reasonable for the jury to conclude that Navarro knew the police would find drugs in the vehicle because she put them in there. When there are competing reasonable inferences, it is up to the jury, not the reviewing court, to choose among them. *See Evans*, 202 S.W.3d at 166 n.27. Thus, the jury could have considered this to be an incriminating statement connecting Navarro to the contraband. *See id.*

In the body camera footage, Officer Martinez described one of the pipes as being "warm" and "freshly used." Sergeant Hernandez testified that this pipe had burnt residue in it, and photographs admitted into evidence confirmed the pipe contained residue. Navarro told the police that after she borrowed the car from Steve, she and Esquivel visited two separate convenience stores to find moon pies. The used pipe was found approximately twenty-three minutes into the video footage that had been edited down by the agreement of the parties. It would have been reasonable for the jury to conclude that Steve was not the last person to use the pipe because too much time had elapsed

8

between when Steve last exercised control over the vehicle and when the police discovered the warm pipe. Instead, based on this timeline, the jury could have inferred that the evidence indicating recent use further linked Navarro to the contraband. *See King v. State*, 895 S.W.2d 701, 704 (Tex. Crim App. 1995) (concluding that the evidence was sufficient to demonstrate a knowing possession when it was shown that, among other things, a pipe had recently been used); *see also Kelsey v. State*, No. 11-17-00053-CR, 2019 WL 758480, at *4 (Tex. App.—Eastland Feb. 21, 2019, pet. ref'd) (mem. op., not designated for publication) (same); *Armstrong v. State*, No. 01-92-01265-CR, 1993 WL 503258, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 9, 1993, no pet.) (mem. op., not designated for publication) (same).

Based on the logical force of the affirmative links we have detailed, we conclude the evidence was sufficient to establish that Navarro knowingly possessed methamphetamine. *See Evans*, 202 S.W.3d at 162. We overrule her sole issue on appeal.

### III.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of November, 2022.

9